UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLEN BYRNE and
ANGELA COLONE,

       Plaintiffs,                      CIV. NO. 13-15118

       v.                               HON. TERRENCE G. BERG

JEFFREY BERO and JOHN           HON. R. STEVEN WHALEN
MORGAN,

       Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 15)**

Plaintiff Angela Colone[1] ("Plaintiff") brings this 42 U.S.C. § 1983 action against Defendant Police Officer Jeffrey Bero, asserting a claim of excessive force.[2] Defendants filed a motion for summary judgment, based primarily upon qualified immunity (Dkt. 15). Plaintiff filed a response brief (Dkt. 17), and Defendants' filed a reply (Dkt. 18). The Court, having carefully reviewed the parties' briefs and supporting materials, finds that the motion may be resolved on the basis of the

---

[1] Plaintiff Ellen Byrne is Ms. Colone's mother. She does not bring any independent claims in the Complaint (Dkt. 1), a fact that Plaintiff acknowledges in her response to Defendants' motion for summary judgment (Dkt. 17 at 14). It is unclear why Ms. Byrne was named as a plaintiff in this lawsuit. It is possible that the Ms. Byrne initially brought this suit as Ms. Colone's guardian; however, the Complaint does not clearly indicate that. In any event, Plaintiff Colone turned 18 in November 2014 (Dkt. 15, Ex. 3 at 5), and can litigate this case in her own name. Therefore, Ms. Byrne will be dismissed as a named plaintiff in this suit.

[2] The Complaint (Dkt. 1) also asserted a claim against Defendant Police Officer John Morgan, for failing to intervene and stop the excessive force allegedly committed by Defendant Bero. However, in Plaintiff's response (Dkt. 17) to Defendants' motion for summary judgment, Plaintiff indicated that she is abandoning this claim.

record and that oral argument would not significantly aid the Court's decision. Accordingly, Defendants' motion for summary judgment (Dkt. 15) will be decided without a hearing.  *See* E.D. Mich. LR 7.1(f)(2).

For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  As described more fully below, Plaintiff's claim of excessive force against Defendant Bero may proceed.  Thus, Defendants' motion for summary judgment is **DENIED** as to this claim.  As to Defendants' motion for summary judgment against Defendant Morgan, this motion is **GRANTED.**  As to any claims brought by Plaintiff Ellen Byrne (Plaintiff Angela Colone's mother), those claims are **DISMISSED WITH PREJUDICE**.  Therefore, Defendant Morgan and Plaintiff Byrne are dismissed from this suit.

## I.  BACKGROUND

This case arises out of the arrest of Plaintiff, then 16 years old, by Defendant Police Officers Jeffrey Bero and John Morgan of the Redford Township Police Department (Dkt. 1).  On February 2, 2013, at approximately 2:15 a.m., Redford Township police officers, Defendants Bero and Morgan, were dispatched to 20049 Lexington Street in Redford, Michigan, on a call reporting an assault and battery/damage to property in progress (Dkt. 1; Dkt. 15, Ex. 2, Police Report). When they arrived, Defendant Bero was met by Chad Cox, an occupant of the residence (Dkt. 15, Ex. 2).  Mr. Cox informed Defendant Bero that Plaintiff had gotten into a fight with another guest while attending a party at his home and had thrown an object through his front living room window.  *Id.*  During her deposition,

2

Plaintiff indicated that she got into a physical confrontation during the party with an "Asian woman" who she did not know (Dkt. 15, Ex. 3 at 22-23). Apparently due to Plaintiff's conduct during this argument, Mr. Cox picked up Plaintiff, and carried her out of the house to the front porch (Dkt. 15, Ex. 3 at 27). Plaintiff, upset at being ejected from the party, took a potted plant from the yard, and heaved it through a front window, shattering it (Dkt. 15, Ex. 3 at 29). Plaintiff admitted to drinking "liquor" (she could not recall how much), and smoking marijuana at the party (Dkt. 15, Ex. 3 at 21-22).

When the police arrived and Defendant Bero was approaching the house, he noticed Mr. Cox's mother and the owner of the house – Cheryl Mason – standing next to the open driver-side door of a vehicle parked in the driveway (Dkt. 15, Ex. 2). Plaintiff was sitting in the passenger seat of the vehicle and her boyfriend, 20-year-old Anthony Carmona, was sitting in the driver's seat. *Id.* Plaintiff testified that Ms. Mason had her foot in the door of the car, preventing it from being closed, and that Ms. Mason had reached across Mr. Carmona and struck Plaintiff in the left side of her face (Dkt. 15, Ex. 3 at 32-33). There is no indication in the record that either officer witnessed Ms. Mason strike Plaintiff.

According to his Police Report, as Defendant Bero approached the vehicle, he heard Plaintiff yelling at Mr. Carmona that she needed to "get out of here." (Dkt. 15, Ex. 2). The car was not running, and the keys were not in the ignition. *Id.* As Defendant Bero shined his flashlight into the car, he heard Plaintiff say, "Great! Now I'm going to jail!" (Dkt. 15, Ex. 2). At that point, Ms. Mason informed the

3

officer, Defendant Bero, that she witnessed Plaintiff break her window, and that she wanted to prosecute (Dkt. 15, Ex. 2).

The Police Report states that Defendant Bero asked Plaintiff to get out of the car, but she did not do so immediately but rather asked him why she was being arrested (Dkt. 15, Ex. 2; Ex. 3 at 36, 41). Plaintiff testified that Defendant Bero then responded "you're not asking questions, I am," opened the car door, grabbed her right arm, pulled her out of the car, and immediately threw her to the ground (Dkt. 15, Ex. 3 at 36). In the Police Report, and during his deposition, Defendant Bero stated that he grabbed Plaintiff's right wrist to remove her from the vehicle, but she tried to pull away from him, lost her balance and fell on her own, without any push from him (Dkt. 17, Ex. 2; Ex. 4 at 14). Specifically, the Police Report states:

> I TOLD [PLAINTIFF] TO EXIT THE CAR AND SHE REFUSED SO I GRABBED HER RIGHT WRIST AND SHE EXITED THE CAR. I NOTICED A STRONG ODOR OF BOTH MARIJUANA AND INTOXICANTS COMING FROM HER BREATH AND PERSON. SHE ASKED WHY I WAS GRABBING HER WRIST AND I TOLD HER THAT SHE WAS UNDER ARREST. SHE SAID NO AND STARTED TO PULL AWAY FROM ME WITHOUT SUCCESS. SHE THEN STARTED PUSHING ME SO I PULLED HER BY HER RIGHT ARM AWAY FROM THE CAR AND TOWARD THE LAWN. SHE LOST HER BALANCE AND FELL FACE FIRST TO THE FROZEN GROUND WHERE SHE RECEIVED BRUISES AND SCRAPES TO THE RIGHT SIDE OF HER FACE (Dkt. 15, Ex. 2) (capitalization in the original).

The above statement in the Police Report and Defendant Bero's deposition testimony both state that Plaintiff fell on her own as she was exiting the car. However, Defendant Bero also completed a "Use of Force Report Form" (Dkt. 17, Ex. 3) in which he wrote that he used a "straight arm bar takedown" maneuver on

4

Plaintiff.[3] Defendant Bero attempted to explain this discrepancy in his deposition by stating that he used the term "straight arm bar takedown" on the form as a short-hand description of his actions that his supervisors would understand, although he says he did not, in reality, take Plaintiff to the ground by executing a straight arm bar take down (Dkt. 15, Ex. 4 at 41). Defendant Bero maintains that he provided the details of his action in his Police Report, rather than in the Use of Force Report. The Use of Force Report (a two-page form) also checks off Plaintiff's "level of resistance" as "verbal resistance – stated she would not be arrested" and "defensive resistance – struggled and pushed away from arrest." *Id.* Defendant Bero admits in his deposition, however, that Plaintiff did not actually offer any verbal resistance; she never stated she would not be arrested as Defendant Bero writes on the form (Dkt. 15, Ex. 4 at 43).[4]

---

[3] Although he denies using a "straight arm bar takedown" on Plaintiff, Defendant Bero described the technique as follows, during his deposition:

**Error! Main Document Only.**Q. How is the straight arm bar performed?

A. Well, it's performed initially with a distraction, which is a knee strike to the common peroneal nerve of the thigh, and at that time the right wrist, or whichever wrist you have, goes to your hip. You put your opposite arm against the triceps of the person, and then stepping back with your leg, putting the entire force of your weight on the person so they fall to the ground.

\*\*\*

Q. How does the person fall when you employ that?

A. They fall on their front.

Q. Face first?

A. Correct. (Dkt. 15, Ex. 4 at 64-65).

[4] Although Defendant Bero offers explanations for the inconsistencies between his deposition testimony and the statements in his Use of Force form, and the Court does not seek to judge the credibility of the witnesses at the summary judgment stage, the fact that Defendant Bero, in filling

If Defendant Bero did actually execute a straight arm bar take down, it bears noting that, on the night of the incident, Plaintiff was 16 years old, five feet five inches tall and approximately 110 pounds in weight; Defendant Bero was six feet six inches in height, and approximately 375 pounds in weight (Dkt. 17; Ex. 3; Dkt. 15, Ex. 4 at 11).

Plaintiff contradicted Defendant Bero's testimony that she struggled with him in any way (Dkt. 15, Ex. 3 at 41). Plaintiff stated that Defendant Bero grabbed her by the arm, pulled her out of the car, and then immediately pushed her face–first to the cement driveway, causing the injuries to her face and teeth. *Id.* Plaintiff does not know exactly how Defendant Bero brought her to the ground, as he was standing behind her at the time she was thrust downward (Dkt. 15, Ex. 3 at 38-39). After going to the ground, Plaintiff was handcuffed by Defendant Bero and placed in the back of the police car by Defendant Morgan (Dkt. 17, Ex. 3 at 40-41). The right-side of Plaintiff's face was bleeding, and she could feel broken and chipped teeth in her mouth (Dkt. 15, Ex. 3 at 43-44).

At this point, Plaintiff's boyfriend, Mr. Carmona, began yelling that he was going to kill himself, so Defendant Bero took him into protective custody and transported him to the hospital (Dkt. 15, Ex. 4 at 39). Plaintiff was transported to the Redford Police Department by Defendant Morgan, her parents were contacted and she was released into her father's care and custody (Dkt. 15, Ex. 2). Plaintiff's

---

out the very form used to make a record of the level of force used, chose to characterize his action as a straight arm bar take down, deserves significant weight in evaluating whether there is a genuine issue of fact as to the level of force that was actually used, and its excessiveness under the circumstances.

6

parents took her to the hospital that morning; her right-eye was swollen shut, and she had six broken teeth, requiring extensive dental treatment (Dkt. 15, Ex. 3 at 44-47).

## II. ANALYSIS

### A. *The Standard for Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

In the specific context of a § 1983 action, the non-moving party "must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state law.'" *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). As there is no dispute that Defendant Bero in this case acted under color of state law, this Court's inquiry must focus on whether there was an actionable deprivation of a right secured under the Constitution or the laws of the United States.

### B. *Plaintiff's Excessive Force Claim Against Defendant Bero*

Plaintiff alleges that Defendant Bero's conduct subjected her to excessive force, in violation of the Fourth Amendment (Dkt. 1). Under the Fourth Amendment, individuals have a right to be free of excessive force when police make

8

an arrest or seizure. *See Graham v. Conner,* 490 U.S. 386, 394–95 (1989). This inquiry turns on the objective reasonableness of the officer's conduct in view of the facts and circumstances facing the officer. *Id.* at 397. In making this evaluation, courts look at: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. This analysis "contains a built-in measure of deference to the officer's on-the-spot judgment[.]" *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation omitted).

Upon review, the Court concludes that Plaintiff has set forth sufficient admissible evidence to raise a genuine issue of material fact regarding the reasonableness of Defendant Bero's use of force. Each of the three *Graham* factors weigh in favor of this conclusion.

### i) The Severity Of The Crime

Turning first to the severity of the crime at issue, Defendants argue that they were dispatched to investigate an assault and battery in progress. However,

viewing the record in the light most favorable to Plaintiff, when the officers arrived on the scene, they did not witness any assault in progress, rather they found a 16 year old girl sitting in a parked car, and a home-owner accusing her of breaking a window. This situation did not present the same kind of risk of injury or danger that one would find if coming upon an assault in progress. The scene was rather one where the misdemeanor crime of malicious destruction of property had just occurred. *See* Mich. Comp. Laws § 750.377a. In considering this factor, there was nothing about the severity of the crime that called for a particularly high level of use of force. Indeed, the underlying crime is relatively minor when compared to the level of force allegedly taken against Plaintiff. Thus, as to this first factor, the crime allegedly committed by Plaintiff was likely a misdemeanor. Consequently, the low severity of the crime raises a question as to whether the degree of force applied by Defendant Bero was reasonable under the circumstances.

### ii) The Threat to the Safety of the Officers or Others Posed By Plaintiff

Second, the evidence in the record creates a genuine issue of material fact as to whether Plaintiff's conduct posed any immediate threat to the safety of Defendant Bero or to others. Indeed, when Defendant Bero arrived on the scene, Plaintiff was seated in a parked car. Once Defendant Bero had removed Plaintiff from the car, she was physically restrained and in his control at all times, as he had a firm grip on Plaintiff's right arm. *See Harris*, 583 F.3d at 366 (noting that a plaintiff "did not pose an immediate threat" in part because she was restrained and surrounded by officers). Moreover, there is no indication that Plaintiff made any

10

verbal threats or aggressive physical moves toward Defendant Bero or any other person at the scene after the police arrived. A small and slight 16 year old, at five foot five inches and 110 pounds, Plaintiff clearly presented no physical threat to Defendant Bero's six foot six inch, 375-pound frame. *See Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (holding that plaintiff did not pose an immediate threat when she possessed no weapon, made no verbal threats, and was shorter and lighter than the officers); *Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (abrogated on other grounds) (finding that the plaintiff did not pose a threat in part because he was 120 pounds and restrained by a man weighing 175 pounds). Viewed in the light most favorable to Plaintiff, the evidence creates a genuine issue of material fact that the force employed by Defendant Bero – allegedly a straight arm-bar takedown of a Plaintiff who was unarmed, physically restrained, and outweighed by over 250 pounds – was excessive. Although Defendant Bero maintains in some of his testimony that Plaintiff simply fell down, that he did not push her to the ground, this difference in the testimony between Defendant and Plaintiff (and, to a lesser extent, between Defendant and his own Use of Force report) creates a genuine issue of fact as to what happened that must be resolved by the jury. Even considering that Plaintiff may have been non-compliant in refusing to immediately exit the parked car, a reasonable jury could find that Plaintiff's conduct posed no threat to the safety of Defendant Bero or anyone else and the use of the arm-bar takedown was unreasonable under these circumstances.

### iii) Evidence Of Active Resistance to Arrest, Flight Or Evasion

Finally, there is a question of fact as to whether the evidence shows that Plaintiff was actively attempting to resist or evade arrest by flight. First, Plaintiff's statement to her boyfriend, that she needed to "get out of here," which was overheard by Defendant Bero when he first arrived on the scene, may not have been made in response to the officers' arrival at all. Immediately prior to the officers' arrival, the homeowner – Ms. Mason – was yelling at Plaintiff and struck her in the face (Dkt. 15, Ex. 32-33). A reasonable fact-finder could conclude that Plaintiff's statement did not express a desire to run from the police, but rather to escape from further blows from Ms. Mason.

As to Plaintiff's interactions with Defendant Bero, even assuming that Plaintiff asked Defendant Bero "why am I being arrested," and also that she failed to immediately exit the parked car, it is far from clear that such conduct would be considered the kind of active resistance to arrest that might justify a full-body take down. *See Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009) (noting that "de minimis or inconsequential" resistance does not justify a substantial use of force); *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (noting that "passive" resistance did not justify use of significant force). Moreover, while Plaintiff's non-compliance may have justified some physical response by Defendant Bero to control Plaintiff, the question is whether the amount of force utilized was reasonable under the circumstances. *See Lawler v. City of Taylor*, 268 Fed. App'x. 384, 387 (6th Cir. 2008) (quoting *Graham*, 490 U.S. at 395) ("the Fourth

Amendment governs more than just 'when ' force may be applied; it also governs 'how [that force] is carried out" – the defendant officer's "use of force in throwing [suspect] to the floor was disproportionate to any threat he faced," given that suspect had merely insulted officer and "raised his left arm slightly"); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("even where some force is justified, the amount actually used may be excessive").

Here, in response to Plaintiff's initial refusal to exit the parked car, Defendant Bero either (as he stated in the Use of Force Report) utilized a straight arm-bar takedown maneuver that forcefully thrust her face-first onto a frozen concrete driveway – or – he pulled her from the car and then she fell to the ground by accident. The record creates an issue of fact as to whether Defendant Bero intentionally took Plaintiff to the ground – as Plaintiff claims and as Defendant Bero's Use of Force form corroborates – or whether he only restrained her and she lost her balance and fell. Viewing these facts in the light most favorable to Plaintiff, they also create a genuine issue of material fact as to whether the intentional take down, if it occurred, violated her Fourth Amendment right to be free from excessive force.

Defendants argue that this case is governed by *Hayden v. Green*, 640 F.3d 150 (6th Cir. 2011), a case that, in Defendants' estimation "held that a takedown maneuver after disobeying an officer's commands was not excessive force as a matter of law" (Dkt. 15 at 10). However, the facts of this case make it readily distinguishable from *Hayden*. In *Hayden*, the plaintiff crashed his car into another

vehicle, and then left the scene of the accident – a hit and run. Police quickly located the plaintiff – still driving his badly damaged car – outside a nearby hospital emergency room. The defendant police officer activated his patrol car's overhead lights, and positioned his cruiser so as to block the roadway in front of the plaintiff's car. In response, the plaintiff drove up onto the curb, in an effort to drive around the police cruiser. The defendant police officer then exited his vehicle, strode over to the plaintiff's car, opened the door, grabbed the plaintiff's clothing near the top of his chest, yanked once without effect, and finally pulled the plaintiff from his seat to the pavement in one fluid motion. The plaintiff's car was still in drive, so it began to roll away. The officer then moved toward the runaway car to stop it, and the plaintiff then stood up from the ground, which caused the officer to run back to him. The officer told the plaintiff to "go down," which he chose not to do at first, so the officer said "go down" again and jerked the plaintiff back to the ground by his collar.

In *Hayden*, the Sixth Circuit reversed the District Court's denial of qualified immunity to the defendant officer, with Judge Kethledge observing that "[a] motorist who leaves the scene of an accident, and then disregards a rather obvious police indication to stop his vehicle, should not be completely surprised when later he is forcibly removed from it." *Hayden*, 640 F.3d at 151. The facts of this case are completely different from those in *Hayden*. It appears undisputed in this case that Plaintiff's only "resistance" before being forcibly removed from the (parked, keys out of the ignition) car she was sitting in was her failure to immediately get out of the

14

car when ordered, and her asking Defendant Bero "why am I being arrested." There is no indication in this case that Plaintiff was attempting to flee arrest, unlike in *Hayden*, where there was a video tape showing the plaintiff trying to get away. Even according to Defendant Bero's version of events, Plaintiff attempted to pull away from his grasp, but she never escaped the grip that he had on her arm, and thus was always under his control. Contrasting this case to *Hayden*, where the plaintiff left the scene of an accident, drove up on a curb to dodge a police cruiser, and stood up when the officer chased after the run-away car, it is clear that this case contains much less evidence of an attempt to evade arrest. Further, the force applied to Plaintiff – a 16 year old girl – appears to be much greater than the force applied to the plaintiff in *Hayden*. In this case, if we accept the Use of Force Report's words, Defendant Bero employed a "straight arm-bar takedown" which had the result of pushing Plaintiff face-first into a concrete drive-way. In *Hayden*, the defendant grabbed the plaintiff's collar and pulled him down to the ground. Thus, *Hayden* does not support Defendant Bero's position that the use of force in this case was reasonable.

### iv) Qualified Immunity

As to Defendant Bero's qualified immunity defense, "it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment. To defeat qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed[.]" *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th

Cir. 2007). Accordingly, government officials are entitled to qualified immunity, despite the existence of a constitutional violation, if such violation was not "clearly established" at the time of the incident. *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). A constitutional violation is clearly established when "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Id*. at 640.

The Court finds that the constitutional violation at issue here was clearly established at the time the incident occurred. As discussed above, each of the *Graham* factors support a finding of excessive force. This alone supports the conclusion that qualified immunity should not apply. *See Rohrbough*, 586 F.3d at 587 (finding a constitutional violation to be clearly established when each of the *Graham* factors supported a finding of excessive force). Moreover, numerous Sixth Circuit opinions clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented. *See Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) (holding that it is clearly established that when a suspect refuses to follow officer orders, but otherwise poses no safety threat, use of significant force is unreasonable); *Meirthew v. Amore*, 417 Fed. App'x 494, 497 (6th Cir. 2011) (use of arm-bar takedown on unarmed female arrestee was unreasonable under the circumstances, and the defendant was not entitled to qualified immunity, even where the plaintiff was non-compliant with police directives); *Pershell v. Cook,* 430 Fed. App'x. 410, 415 (6th Cir. 2011) (knocking suspect to the ground was unreasonable when suspect "did not resist arrest or pose

an immediate danger to officers"); *Shreve*, 453 F.3d at 687 (finding "passive resistance" to be an insufficient justification to use significant force against a plaintiff who was already pacified through the use of pepper spray); *Smoak*, 460 F.3d at 783–84 (noting that despite plaintiff's action in suddenly jumping to his feet, a reasonable officer would have known that knocking the plaintiff to the ground was excessive in light of the fact that the plaintiff was handcuffed).

Indeed, in *Harris v. City of Circleville*, the Sixth Circuit held that "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009); *see also Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 404 (6th Cir. 2009) (quoting *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607–08 (6th Cir. 2006)) ("This Court has consistently held ... that 'use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law'"). Other district courts agree. *See, e.g., Stockton v. Auren*, No. CIV. 07-556 JRT/FLN, 2008 WL 1994992, at *7 (D. Minn. May 5, 2008) (denying qualified immunity to a defendant police officer who executed a forceful arm-bar takedown on a small, frail, and disoriented suspect who was not actively resisting arrest); *Sayler v. Gilbert*, No. 2:08-CV-516, 2010 WL 1276713, at *7 (S.D. Ohio Mar. 26, 2010) (qualified immunity denied to a defendant police officer who executed a straight arm-bar takedown on intoxicated, non-compliant, arrestee).

Because it was clearly established that the use of significant force in response to passive resistance may constitute excessive force, and because Plaintiff posed no safety threat to Defendant Bero or to others, Bero is not entitled to summary judgment based upon qualified immunity.

### C. *Plaintiff's Claims Against Defendant Morgan*

As noted earlier, the Complaint also brought a claim against Defendant Morgan, for failing to intervene and stop the alleged use of excessive force by Defendant Bero. Defendant Morgan's mere presence during the altercation between Plaintiff and Defendant Bero, without a showing of some direct responsibility, cannot suffice to subject him to liability. *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Plaintiff, in apparent recognition of this, has conceded that she cannot prevail on her claims against Defendant Morgan (Dkt. 17 at 13-14). Therefore, Defendants' motion for summary judgment is granted as to the claims asserted against Defendant Morgan, and he is dismissed from this lawsuit.

### III. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. 28) is **GRANTED IN PART** and **DENIED IN PART.** Defendants' motion is **DENIED** as to the excessive force claim brought against Defendant Bero; Defendants' motion is **GRANTED** as to the failure to intervene claim brought against Defendant Morgan, and he is dismissed from this lawsuit. Furthermore, as Plaintiff acknowledges that her mother, Ms. Byrne, is not bringing any claims, she

is hereby dismissed from this lawsuit as a named plaintiff. The Clerk's Office is directed to amend the case caption accordingly.

      **SO ORDERED.**

                                      s/Terrence G. Berg
                                      TERRENCE G. BERG
                                      UNITED STATES DISTRICT JUDGE

Dated: June 2, 2015

                            **Certificate of Service**

      I hereby certify that this Order was electronically submitted on June 2, 2015, using the CM/ECF system, which will send notification to each party.

                                        s/A. Chubb
                                      Case Manager